ORIGINAL

FILED
JUN 24 2008
U.S. COURT OF FEDERAL CLAIMS

Phillip Wm. Lear (Admitted 12-22-2005)
Stephanie Barber-Renteria (Admitted 10-13-2005)
Lear & Lear L.L.P.
808 East South Temple Street
Salt Lake City, Utah 84102
Telephone: (801) 538-5000
Facsimile: (801) 538-5001

Attorneys for Plaintiff

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **YATES PETROLEUM CORPORATION, MYCO INDUSTRIES, INC., SACRAMENTO PARTNERS, LP, ABO PETROLEUM CORPORATION**, and **YATES DRILLING CORPORATION,** New Mexico corporations<br><br>Plaintiffs,<br><br>v.<br><br>**EDWARD T. SCHAFER**, in his official capacity as Secretary of the United States Department of Agriculture; **THE UNITED STATES DEPARTMENT OF AGRICULTURE; ABIGAIL R. KIMBELL**, in her official capacity as Chief of the United States Forest Service; **THE UNITED STATES FOREST SERVICE; RICK D. CABLES,** Regional Forester, Rocky Mountain Region of the United States Forest Service; **MARY H. PETERSON,** Forest Supervisor, Thunder Basin National Grassland, of the United States Forest Service; **ROBERT M. SPRENTALL**, in his official capacity as District Ranger of the Thunder Basin National Grasslands; **DIRK A. KEMPTHORNE,** in his official capacity as Secretary of the United States Department of Interior; **THE UNITED STATES** | No.: 08-462 L<br><br>**COMPLAINT** |

| | |
|---|---|
| **DEPARTMENT OF THE INTERIOR; JAMES CASWELL,** in his official capacity as Director, Bureau of Land Management; **THE BUREAU OF LAND MANAGEMENT; DONALD SIMPSON,** Acting State Director, Wyoming State Office of the Bureau of Land Management; **CHRIS HANSON,** in his official capacity as Field Office Manager, Buffalo Field Office of the Bureau of Land Management,<br><br>Defendants. | |

Plaintiffs **YATES PETROLEUM CORPORATION, MYCO INDUSTRIES, INC., SACRAMENTO PARTNERS, LP, ABO PETRO CORPORATION,** and **YATES DRILLING CORPORATION** (hereinafter collectively **"Yates"**), by and through their undersigned attorneys, complains of Defendants and for causes of action alleges, as follows:

## INTRODUCTION

1. This case involves the unlawful taking of Yates' private real property rights by the United States Forest Service and Bureau of Land Management as the approving agencies for the Plan of Development (**"POD"**) and corresponding Applications for Permit to Drill (**"APD's"**) coalbed methane wells within the Thunder Basin National Grasslands in Campbell County, Wyoming.

2. This case arises under the Constitution of the United States (**"Constitution"**) and statutes enacted pursuant thereto for Defendants' violation of Fifth Amendment proscribing

federal action resulting in the impermissible taking of Yates' coalbed methane rights without compensation.

3. Also, this case involves violations of the multiple use, sustained yield, and pollution prevention provisions of the Federal Land Policy and Management Act OF 1976, as amended (**"FLPMA"**).

4. This case involves violations conservation and protection of mineral resources provisions of the Mineral Lands Leasing Act of 1919, as amended (**"MLA"**).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. 1491 (claims against the government); and 28 U.S.C. § 1491 (claim for just compensation for the taking of private property).

6. Venue is proper in the United States Court of Federal Claims pursuant to 28 U.S.C. § 1491 because Yates is seeking just compensation for the taking of property.

## PARTIES

7. Yates Petroleum Corporation (**"Yates Petroleum)"**is a New Mexico corporation in good standing and is licensed to do business in the State of Wyoming. Yates Petroleum engages in the business of oil and gas exploration and production in the State of Wyoming and other states.

8. MYCO Industries, Inc. (**"Myco"**) is a New Mexico corporation in good standing and is licensed to do business in the State of Wyoming. Myco engages in the business of oil and gas exploration and production in the State of Wyoming and other states.

9. Sacramento Partners, LP, (**"Sacramento"**) is a New Mexico corporation in good standing and is licensed to do business in the State of Wyoming. Sacramento engages in the business of oil and gas exploration and production in the State of Wyoming and other states.

10. ABO Petroleum Corporation (**"Abo"**) is a New Mexico corporation in good standing and is licensed to do business in the State of Wyoming. Yates engages in the business of oil and gas exploration and production in the State of Wyoming and other states.

11. Yates Drilling Corporation (**"Yates Drilling"**) is a New Mexico corporation in good standing and is licensed to do business in the State of Wyoming. Yates Drilling engages in the business of oil and gas exploration and production in the State of Wyoming and other states.

12. Plaintiffs Yates Petroleum, MYCO, Sacramento, ABO, and Yates Drilling Corporation are undivided interest owners in the Leases (hereinafter defined) and comprise 100% of working interest owners in the Leases.

13. Defendant Edward T. Schafer (hereinafter **"Defendant Schafer"**) is sued in his official capacity as Secretary of the United States Department of Agriculture.

14. Defendant United States Department of Agriculture (hereinafter **"Defendant DOA"** or **"DOA"**) is the federal agency responsible for administering 193 million acres of National Forests and Grasslands in the United States, including the Thunder Basin National Grasslands located in Campbell County, Wyoming (hereinafter **"Thunder Basin"**)

15. Defendant Abigail R. Kimbell (hereinafter **"Defendant Kimbell"**) is sued in her official capacity as Chief of the United States Forest Service.

16. Defendant United States Forest Service (hereinafter **"Defendant USFS"** or **"USFS"**) is a federal agency within the United States Department of Agriculture responsible for managing national forests and grasslands, including Thunder Basin.

17. Rick D. Cables, (hereinafter **"Defendant Cables"**) is sued in his official capacity as the Regional Forester, Rocky Mountain Region of the USFS.

18. Mary H. Peterson, (hereinafter **"Defendant Peterson"**) is sued in her official capacity as the Forest Supervisor, Rocky Mountain Region of the USFS.

19. Defendant Robert M. Sprentall (hereinafter **"Defendant Sprentall"**) is the District Ranger of Thunder Basin.

20. Defendant Dirk A. Kempthorne (hereinafter **"Defendant Kempthorne"**) is sued in his official capacity as Secretary of the United States Department of the Interior.

21. Defendant United States Department of the Interior (hereinafter **"Defendant DOI"** or **"DOI"**) is the federal agency responsible for administering public lands of the United States, including the mineral rights in public lands of the United States within Thunder Basin.

22. Defendant James Caswell (hereinafter **"Defendant Caswell"**) is sued in his official capacity as the Director of the Bureau of Land Management.

23. Defendant Bureau of Land Management (hereinafter **"Defendant BLM"** or **"BLM"**) is the federal agency within the DOI responsible for managing the public lands of the United States, including mineral leasing and mineral extraction operations in those lands, including in Thunder Basin.

24. Defendant Chris Hanson is the Manager of the BLM Buffalo Field Office having direct jurisdiction over mineral extraction operations, including operations for the extraction of coalbed methane in Thunder Basin.

## GENERAL ALLEGATIONS

**Facts Pertaining to Thunder Basin POD Processing.**

25. Effective December 1, 1967 BLM issued to Yates United States Lease for Oil and Gas WYW-8396, covering the following described lands in Campbell County, Wyoming:

**Township 42 North, Range 70 West, 6th P.M.**

Section 7: Lots 13-20
Section 13: Lots 5-8, 10-12
Section 18: Lots 1 and 2

(containing 642.30 acres, more or less)

26. Effective January 1, 1997 BLM issued to Yates United States Lease for Oil and Gas WYW-140760, covering the following described lands in Campbell County, Wyoming:

**Township 42 North, Range 71 West, 6th P.M.**

Section 9: Lots 3-6

(containing 158.55 acres, more or less)

The lands affected by WYW-8396 and WYW-140760 are hereinafter sometimes referred to as the **"Subject Lands."**

27. WYW-8396 and WYW-1040760 (hereinafter collectively the **"Leases"**) cover oil, gas, and associated hydrocarbons, including coalbed methane in the Subject Lands. The Leases are the valid subsisting leases affecting the Subject Leases.

28. On or about June 24, 2002, Yates submitted its POD, the Master Field Plan for ten Applications for Permit to Drill (**"APDs"**), and its Biological Assessment/Biological Evaluation (**"BA/BE"**) to the BFO for processing and approval. The POD, APDs, and BA/BE is hereinafter collectively referred to as **"Thunder Basin POD."** The BFO date-stamped the Thunder Basin POD received as of June 28, 2002. Yates copied the USFS on the submittal.

{00021015.2}

29. The BFO completed the geologic review on July 17, 2002, and forwarded the POD to USFS on or about August 1, 2002.

30. On or about August 2, 2002, USFS received the Thunder Basin POD.

31. On or about August 20, 2002, USFS "posted" the APDs as required by law, but contrary to USFS regulations that require posting within three days following receipt of APDs from the BLM.

32. By letter dated August 23, 2002, USFS notified the BFO that USFS's decision-making process would take a minimum of 188 days, with a reasonable estimate of completion in the spring/summer of 2003. The notice established a time-line of interim processing deadlines for the POD and APDs.

33. On or about September 16, 2002, in excess of six weeks after receiving the POD USFS distributed its internal scoping request to its various specialists.

34. On or about October 4, 2002, USFS received its Recreation/Visual Quality Specialist's. final scoping document. USFS did not receive the requisite Heritage Resources, Hydrology/Soils, Lands/Minerals/Oil and Gas, Wildlife/Fisheries, or Environmental scoping documents.

35. On or about December 19, 2002, the USFS conducted the on-site inspection of the proposed well sites. The USFS raised no concerns or objections to the well-site locations at the time of the inspection and provided Yates with preliminary conditions of approval for the POD.

36. On or about January 12, 2003, Yates submitted its paleontology survey (**"Paleo Survey"** to the USFS. The USFS did not "accept" the Paleo Survey until April 24, 2003.

37. In early 2003, when Yates could see that the USFS would not timely complete the EA, Yates employed a consultant to prepare the EA.

38. By letter dated March 3, 2004, Yates advised the USFS that delays resulting from its processing of the Pods caused pressure declines in the Lease reservoirs (drainage) due to venting of coalbed methane by surface coal mining in the vicinity and by coalbed methane operations undertaken on lands adjacent to and in the vicinity of, the Leases.

39. Thereafter, by undated letter, USFS notified Yates that processing of the POD will take an additional six to nine months, with an estimated time for issuance in fall of 2003.

40. On or about March 28, 2003, USFS transmitted its external scoping notices to outside agencies for review and comment, as required by law and DOA directives. However, USFS transmitted the scoping notices three months after the scheduled delivery date for said notices. USFS scheduled this notices to be sent in November or early December of 2002.

41. On or about May 9, 2003, USFS received responses to its external scoping requests from the Environmental Protection Agency, the United States Fish and Wildlife, Biodiversity Conservation Alliance, and the Wyoming Governor's Office. The responses comprised all external agency responses required by law.

42. On or about July 1, 2003, the USFS wildlife biologist noted on records internal to the USFS that the June 24, 2002 BA/BE was out of date and must be updated.

43. On or about August 12, 2003, Yates, by and through its consultant, submitted the first draft of the Environmental Assessment (**"EA"**) prepared by Yates' consultant to USFS.

44. On or about September 24, 2003, USFS completed its initial review of the EA.

45. On or about October 1, 2003, USFS requested concurrence of the Wyoming State Historical Preservation Office that no historic properties will be affected by the contemplated development under the POD.

46. On or about November 21, 2003, Yates' consultant met with USFS participants to discuss the status of the POD processing. At that meeting the USFS advised Yates' that the

time-frame for completion would slip an additional until January 2004, with permits being approved by May 2004.

47. Commencing in December 2003 and continuing through August 2005, the USFS required Yates to revise portions of its original POD.

48. On or about January 3, 2004, Yates' consultant Gene George submitted the second revision to the Water Management Plan.

49. On or about January 19, 2004, USFS notified Yates about potential problems with a nearby dam.

50. On or about August 16, 2004, Yates' consultant submitted a revised BA/BE.

51. By letter dated August 19, 2004, USFS responds to Yates' March 3, 2003 letter, asserting that delays in approving the BA/BE are due to Yates' consultant's failure to timely respond to USFS's requests, even though the BA/BE was not reviewed until one year after receipt.

52. By letter dated August 31, 2004, Yates, by and through its counsel, notified the USFS that waste was occurring and requested expedition of the POD and APD's.

53. By letter dated September 3, 2004, USFS responds to Yates' counsel letter regarding significant delays, blaming Yates' consultants for failing to respond timely to requests for revisions to documents.

54. On or about September 9, 2004, in excess of two years after receiving the POD, the USFS published notice of pending EA in the Federal Register, as required by law.

55. In October, 2004, USFS received public comments on the EA.

56. On October 22, 2004, USFS accepts the BA/BE, after two and a half years of revisions.

57. On January 14, 2005, USFS issued the Decision Notice and Findings of No Significant Impact (**"FONSI"**).

58. On March 31, 2005, USFS gave its consent to the BFO to approval of the Thunder Basin POD and issuing the APDs.

59. On March 31, 2005, USFS transmits its Decision Notice and FONSI to Yates and notes that the conditions of approval prevent Yates from using the ridge road from March 1 through July 31, a wait of an additional four months.

60. On April 8, 2005, more than three and a half years after Yates submitted its POD, the BFO signed the FONSI and Yates received the approved APDs.

61. Yates' drainage data discloses that during the period January 17, 2003 through the date of approval of the Thunder Basin POD and corresponding APDs on April 8, 2005, Yates lost approximately 230,000 Mscf of gas through drainage.

62. The value of the lost gas at then prices constitutes a loss to Yates of approximately $1,500,000.00. This sum does not take into consideration losses that occurred prior to 2002.

**Facts Pertaining to Authorized Processing Schedules.**

63. The Mineral Lands Leasing Act of 1920 provides that no permit to drill on Forest Service Lands may be granted without the analysis and approval by the Forest Service of a plan of operations [POD] that covers proposed surface-disturbing activities on the lands. *See* 30 U.S.C. § 226(g).

64. BLM Onshore Order No. 1 governs processing of APDs for oil and gas operations, including operation involving coalbed methane. *See* 48 Fed. Reg. 56226. *See also,* 43 C.F.R. § 3180. Onshore Order No. 1 provides that, upon receipt of a completed APD, the

BLM shall consult with any other involved surface management agency, in this case the Forest Service.

65. Further, Onshore Order No. 1 establishes a time-period of five-days for posting of APDs for public comment and approval of the APDs within 30 days of posting the APDs, for a total processing period of 30-days. If they BLM cannot process APDs within the period, it is obliged to notify the operator with-in the 30-day period.

66. The BLM timely posted the APDs. Conducted its geological review, and forwarded the Thunder Basin POD to the USFS.

67. USGS regulations promulgated pursuant to section 226(g) of the Mineral Lands Leasing Act provide that operators shall submit surface use plans of operation in accordance with Onshore Order No. 1. 36 C.F.R. § 228.105.

68. Further, USFS regulations provide that once an operator submits a surface use plan, the authorized USFS officer must review the plan as promptly as practicable under the circumstances. *See* 36 C.F.R. § 228.107.

69. In reviewing the plan, the authorized officer must comply with the National Environmental Policy Act of 1969 ("**NEPA**"), applicable federal regulations, and applicable portions of the Forest Service Manual and Forest Service Handbook. *See* 36 C.F.R. § 228.107.

70. After reviewing the plan, the officer must make a decision regarding the approval of the plan. The regulations provide that if the authorized officer will not be able to make a decision within three working days after the thirty-day notice period, the authorized officer must provide the operator with a written explanation for the delay and a date on which the decision is likely to be made. *See id.*

71. USFS regulations require Forest Supervisors to process APDs for the drilling of oil and gas wells, including coalbed methane wells, within 33 days of receipt of the applications

or to advise the BLM and applicant in writing that the processing of the surface use plan will be delayed. *See* 36 C.F.R. § 228.107(b)(1).

72. USFS directive and policies delegate authority to regional foresters, forest supervisors, and research station directors to establish policies and procedures for the processing of mineral leases, licenses, and permits. *See* USFS Manual, § 2820.

73. Pursuant to Rules of the Regional Forester, Rocky Mountain Region (**"RMR Forester")**, Forest Supervisors are to have adequate and appropriate staff to provide permit processing and coordination with technical experts in agencies of the DOI so that USFS environmental assessments documents are adequate for tiering BLM decisions. R2 Supplement 2800-94-1 [to the Forest Service Manual at 2822.04c (effective July 29, 1994).

74. Executive Order 13212 expressly directs federal agencies to expeditiously process applications for energy-related projects.

75. Moreover, the Energy Policy Act of 2005, 42 U.S.C. 15921, expressly directs the BLM and USFS to expeditiously process APD's.

76. USFS and BLM processing of the Thunder Basin POD resulted in an inexcusable and extra-ordinary delay.

**Facts Pertaining to Compliance with the National Environmental Protection Act.**

77. In January 2003, the BLM issued the Final Environmental Impact Statement and the Proposed Resource Management Plan Amendment for the Powder River Basin Oil and Gas Project, with the USFS as a cooperating agency.

78. The USFS issued its Thunder Basin National Grassland and its Land and Resource Management Plan in July 2000. In January 2003, the USFS completed its Medicine Bow Forest Revised Land and Resource Management Plan covering, *inter alia*, Thunder Basin.

79. Yates has submitted and obtained numerous PODs on public lands in Campbell County, Wyoming.

80. Based upon its experience and as supplemented by information and belief, Yates states a reasonable period for processing PODs, including preparing Environmental Assessments is six to eight months.

81. USGS raised no concerns at the initial on-site inspection and yet revised its processing schedule several times from 188 to 670 days.

82. Given the current nature of the BLM and USFS land and resource management plans as of January 2003, the two-year period required to process the EA and approve the POD constituted an unnecessary and inordinate delay.

**FIRST CAUSE OF ACTION**

**(Physical Taking)**

83. Plaintiffs reallege Paragraphs 1 through 82 of this Complaint and incorporate them into this First Cause of Action by reference.

84. Yates timely filed its POD and APDs in contemplation of conducting coalbed methane extraction operations to exploit the Leases and to protect its leased reserves from drainage or further drainage from coal mining and existing and contemplated coalbed methane operations in the vicinity of its Leases.

85. Defendants took three years to process and approve the POD and APDs for development of Yates' coalbed methane reserves.

86. Yates' coalbed methane reserves are real property subject to the prohibitions of unconstitutional takings set forth in the Fifth Amendment to the Constitution.

87. During the processing of the POD and APDs Yates was prevented from drilling wells and preventing drainage of its coalbed methane reserves by coal mining and coalbed methane operations in the area.

88. By not processing the POD and APDs in a timely fashion, Defendant's allowed Yates' coalbed methane reserves to be drained by coal mining operations in the vicinity and coalbed methane operations on adjacent lands.

89. Defendant's failure to timely process and approve the POD and APDs resulted in a permanent loss or a temporary loss for the period of processing of Yates' coalbed methane reserves.

90. Yates has not received compensation for the loss of its coalbed methane reserves during the period of processing the POD and APD.

91. Defendants' actions resulted in the deliberate physical taking of Yates' property and property rights without compensation in violation of the Fifth Amendment to the Constitution.

**SECOND CAUSE OF ACTION**

**(Regulatory Taking)**

92. Plaintiffs reallege Paragraphs 1 through 91 of this Complaint and incorporate them into this Second Cause of Action.

93. Defendants' processing and approval of PODs and APDs are regulatory acts of the DOI and DOA.

94. Yates, by obtaining the Leases and applying for the POD and APDs committed and risked substantial corporate resources both in terms of manpower and capital to the drilling

of wells and exploitation of the leased coalbed methane in the understandable, investment-backed expectation of realizing a profit for its endeavors.

95. Loss of the resources during the period of Defendants' processing occurred from extraordinary delays, resulting in a permanent loss of Yates' coalbed methane reserves during the period of processing.

96. The delays as hereinabove alleged resulted in the loss of Yates' reserves and interfered with Yates' investment-backed expectations.

97. The diminution of value to Yates' and its investment-backed expectations is real in the loss of the resources themselves, the income the reserves would have generated, and in the time-value of Yates' budgeted capital committed to the exploration and production operations.

98. By the above mentioned action, Defendant's inaction created a circumstance where Yates' property and property rights were dissipated due to the extraordinary delays by the regulatory agencies. In light of the conditions so created, Defendant's delay cannot be considered lawful or reasonable, but rather a taking.

## PRAYER FOR RELIEF

WHEREFORE, Yates respectfully requests that the Court grant the following relief:

A. Under the First Cause of Action find that Plaintiffs' mineral rights and attendant rights of developing their interests were unconstitutionally physically taken, and allow Plaintiffs to recover just compensation in the amount of $1,500,000.00.

B. In the alternative, under the Second Cause of Action find that Plaintiffs' mineral rights of developing their interests were unconstitutionally taken by regulatory means, and allow Plaintiffs to recover just compensation in the amount of $1,500,000.00.

C. Judgment for fees and costs, pursuant to 42 U.S.C. § 4654(c) and such other relief deemed appropriate by the Court.

DATED this 23rd day of June, 2008.

LEAR & LEAR, LLP

By: [signature]
Phillip Wm. Lear

By: [signature]
Stephanie Barber-Renteria